## UNITED STATES, Appellee
v.
## JOHN R. PEDERSEN, Private–1, U. S. Army, Appellant
2 USCMA 263, 8 CMR 63

No. 838

Decided March 2, 1953

 ██

LT. COL. Stewart H. Legendre, U. S. Army, LT. COL. Edgar R. Minnich, U. S. Army, LT. COL. Herman P. Goebel, Jr., U. S. Army, and CAPT. John R. Sennott, U. S. Army, for Appellant.

LT. COL. Thayer Chapman, U. S. Army, and 1ST LT. Bernard A. Feuerstein, U. S. Army, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused was tried by general court-martial for the offense of intentionally shooting himself, in violation of Article 115, Uniform Code of Military Justice, 50 USC § 709. He was found guilty as charged and sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for five years. The convening authority reduced the period of confinement to two years and suspended the execution of the sentence for two years, at which time, unless sooner vacated, the sentence was to be remitted without further action. A board of review in the office of The Judge Advocate General of the Army affirmed the findings and sentence as approved by the convening authority. This Court granted the accused's petition for review on the issue:

"Whether the court erred in permitting the use of a statement made by the accused in a line of duty investigation held prior to the trial for the purpose of impeaching the accused."

An elaborate restatement of the evidence in this case appears unnecessary. Suffice it to state that the trial record established without dispute that on the morning of September 7, 1951, the accused was found in his barracks with a bullet hole in his left foot caused by the discharge of the accused's own rifle. There were no witnesses to the incident. The accused elected to testify in his own behalf and stated that he did not know his rifle was loaded. He categorically denied that he had intended to inflict a wound upon himself; and contended that the shooting was accidental. Trial counsel attempted to impeach the testimony of the accused by the use of prior inconsistent statements made by the accused during a "line of duty" investigation. Such investigations are official and are held for the purpose of determining whether an injury occurred "in line of duty" for record and pay purposes. During this investigation the accused admitted that he had intentionally shot himself in order to get out of the Army. Trial counsel was allowed, over the strenuous objection of defense counsel, to ask the accused whether he had made this confession, as well as other damaging admissions, to the officer, Captain John Roman, who conducted the "line of duty" investigation. The report of the investigation was not offered in evidence. At the time these prior inconsistent statements were used for impeachment purposes, the law officer advised the court "that proof that a witness made an inconsistent statement is generally admissible only for the purpose of impeaching him. Proof of an inconsistent statement of a witness is not admissible to establish the truth of the matters asserted in the

264

statement unless such proof may properly be received as evidence of a voluntary confession or admission of the witness of some statement of the witness which is otherwise admissible as an exception of the hearsay rule."

Paragraph 153*b* (2) (*c*), Manual for Courts-Martial, United States, 1951, provides as follows:

"The fact that the inconsistent statement was made in the course of an investigation or at another trial does not cause proof of the making of the statement to be inadmissible for the purpose of impeachment. However, *an accused who has testified as a witness may not be cross-examined upon, or impeached by proof of, any statement which was obtained from a violation of Article 31 or through the use of coercion, unlawful influence,* or unlawful inducement. . . ." [Emphasis supplied]

The prior inconsistent statements used by trial counsel in this case were certainly incriminating. The accused admitted that he had taken a round of ammunition from the rifle range and that he inflicted the wound on himself in order to obtain a discharge from the Army. In deciding whether the statements were obtained in violation of Article 31, the following interrogatories taken from the deposition testimony of Captain Roman, the investigating officer, are pertinent:

"Eleventh interrogatory: Did you ask him whether he understood his rights?

"Answer: Yes, I did. I asked if he understood what that meant— he didn't answer me—he was more or less nervous.

"Twelfth interrogatory: Did he nod his head or give any indication that he heard what you were saying?

"Answer: No, sir he didn't.

"Thirteenth interrogatory: Private Pederson, in describing to you the incident with which he is charged, did he give any indication or understanding that he was confessing to the commission of the offense he is charged with the full realization that everything he did say could be held against him in a general courts-martial proceedings?

"Answer: He did not, as far as a general court is concerned, but he felt it would be held against him as far as compensation from the Government in the future was concerned.

"Fourteenth interrogatory: Did he give any indication that he realized that his statement could be used against him in any kind of judicial proceedings?

"Answer: Yes, he was worried that it would be said one reason he was afraid about mentioning it was the fact that he might get into trouble and that he had a clear record, that he would be court-martialed.

"Fifteenth interrogatory: Do you think he realized this statement could be used against him in a court-martial proceedings?

"Answer: I wasn't concerned about that myself.

\* \* \* \* \* \*

"Eighth cross-interrogatory: Have charges been preferred this morning?

"Answer: "I understand this morning that he signed the confession.

\* \* \* \* \* \*

"Tenth cross-interrogatory: Did you tell Pvt Pederson that this statement could be used in a court-martial?

"Answer: No, I didn't.

"Eleventh cross-interrogatory: Did you mention court-martial to him?

"Answer: I mentioned it and I said I was not sure but that I was interested in line of duty and if anything did come up it might be easier in the future to say the truth about it if he did do it.

\* \* \* \* \* \*

"Thirteenth cross-interrogatory What did you mention to him in reference to a court-martial?

"Answer: He mentioned before he made any confession that he was afraid to say anything simply because

**265**

he was afraid it would incriminate him in a court-martial.

"Fourteenth cross-interrogatory: To that what did you tell him?

"Answer: I said that I was not certain that a company commander could try him for AWOL at the time of the incident since he failed to appear at the proper place and time and I was not certain but had no knowledge of any future charges against the man. I did not tell him because he seemed to be aware of it.

\* \* \* \* \* \*

"Twenty-second cross-interrogatory: The language that went into the statement as we have it in front of us, was that dictated by him or is that your phraseology?

"Answer: My own.

"Twenty-third cross-interrogatory: This statement, 'I wish to make the statement in hopes that everyone will realize I have done the wrong thing and will admit it so that everyone will be as lenient on me in the future as is possible', that was put in there and is that your language?

"Answer: Yes, it is.

"Twenty - fourth cross - interrogatory: That was put in there in an effort—

"Answer: Yes, sir, in an effort to help him in line of duty, simply because he indicated those tendencies during the investigation and he was at a loss for words himself so I tried to help him along; he didn't want to come out and say he shot himself so I had to lead him up to it in some way and put the words in his mouth in order to get the statement written."

This testimony indicates that the accused was not informed, as required by Article 31 of the Code, 50 USC § 602, that any statement made by him could be used against him in a subsequent court-martial trial. The statements were obtained in violation of Article 31. Therefore, their use for impeachment purposes was improper and constitutes prejudicial error. Article 31, supra; paragraph 153b(2) (c), Manual, supra; United States v. Welch (No. 196), 3 CMR 136, decided May 27, 1952; United States v. Wilson and Harvey (No. 647), 8 CMR 48, decided February 27, 1953.

We need not decide whether the prior inconsistent statements, offered by trial counsel for impeachment purposes only, could, if legally obtained, be considered as substantive evidence bearing on guilt or innocence. They were, in any event, improperly received in evidence. Without these statements impeaching the veracity of the accused's denials of the offense, there remains in the record no proof that the accused deliberately shot himself. As already noted, there were no witnesses to the shooting. Since the record offers no suggestion that there is available any admissible substitute for the evidence we hold inadmissible (see Manual for Courts-Martial, United States, 1951, paragraph 92), the charge and specification must be dismissed for want of sufficient evidence.

The decision of the board of review is reversed and the charge and specification are dismissed.

Judge BROSMAN concurs. Judge LATIMER concurs in the result.